UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MAT JESSOP,

       Plaintiff,

v.                                    Case No. 6:18-cv-1741-Orl-37DCI

PENN NATIONAL GAMING, INC.;
and EVERI PAYMENTS, INC.,

       Defendants.
_____

## ORDER

Defendant Penn National Gaming, Inc. ("**Penn National**") moves to dismiss Count I of Plaintiff Mat Jessop's Third Amended Complaint (Doc. 80 ("**Complaint**")). (Doc. 87 ("**Motion**").) Plaintiff responds. (Doc. 92) On review, the Court grants the Motion, dismissing Count I with prejudice.

## I.    BACKGROUND

On June 24, 2017, Plaintiff Mat Jessop entered the Sanford Orlando Kennel Club ("**Sanford Club**"), a gaming establishment, and used his credit card. (Doc. 80, ¶ 59.) Upon completion of the transaction in this den of identity thieves, Plaintiff was presented a receipt bearing both the first four and the last four digits of his credit card—more digits

than the Fair Credit Reporting Act, 15 U.S.C. § 1681c(g) ("**FACTA**"), allows.[1] (Doc. 80, ¶ 60; *see also id.* ¶¶ 34–41.) For this privilege, Plaintiff was charged a hefty fee. (*Id.* ¶ 61.)

Penn National avers, and Plaintiff does not dispute, Sanford Club is owned by subsidiaries of Penn National ("**Owners of the Sanford Club**"). (Doc. 87, ¶ 14; *see also* Doc. 80, ¶¶ 13–15.) Also undisputed, Defendant Everi Payments, Inc. ("**Everi**") provides products and services such as ATM cash withdrawals and debit card and credit card cash access transaction services (collectively "**cash access services**") to the Sanford Club. (Doc. 80, ¶ 17; Doc. 87, ¶ 20.) But critical facts are missing from the Complaint. Where did this FACTA-violative receipt come from? In Count I of the Complaint, Plaintiff says it was "presented by Defendants" without explaining which Defendants or how. (Doc. 80, ¶ 60.) Did Plaintiff use an ATM to withdraw cash or was the transaction with Sanford Club employees? Plaintiff alleges the receipt was printed by a "machine," that was "designed, programmed, maintained and operated by Everi," but the Complaint is silent on what kind of machine (e.g. ATM or a credit card reader), who owns the machine, and if employees were involved in the transaction. (*See id.* ¶ 63.) Plaintiff variously claims it was Penn National, or Everi, or employees of the Sanford Club who are responsible for the provision of these services. (*See id.* ¶¶ 20–23.) It is unclear why, if Everi provided the receipt, Plaintiff only charged Penn National with a FACTA violation. (*See* Doc. 80.)

---

[1] 15 U.S.C. § 1681c(g) provides that: "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."

Despite brief facts, the procedural history is long and exhausting. Plaintiff first sued Penn National only, alleging violations of FACTA. (Doc. 1.) Penn National then moved to dismiss the complaint for lack of personal jurisdiction and for failure to state a claim, and Plaintiff asked for leave to file an amended complaint. (Docs. 15, 28.) A telephonic hearing was held before U.S. Magistrate Judge Daniel C. Irick, who dismissed the complaint without prejudice and gave Plaintiff leave to file an amended complaint. (Docs. 31, 33.) Plaintiff then filed an amended complaint (Doc. 34), which was dismissed *sua sponte* by the Court as an impermissible shotgun pleading (Doc. 38), followed by a second amended complaint (Doc. 39). Plaintiff also moved for jurisdictional discovery, which was denied. (Docs. 40, 51.)

On the second go-around, Plaintiff added a second count and a second defendant: unjust enrichment against Everi, alleging Plaintiff paid the transaction fee expecting the transaction would be performed in a secure and legally-compliant manner.[2] (Doc. 39, ¶¶ 88–95.) Both Penn National and Everi then moved to dismiss. (Docs. 41, 50.) Penn National again asserted lack of personal jurisdiction and failure to state a claim. (Doc. 41.) Everi argued Plaintiff had failed to state a claim for unjust enrichment. (Doc. 50.) The Court found Plaintiff stated a claim against Everi, but dismissed Penn National without prejudice, finding Plaintiff had failed to establish personal jurisdiction or that Everi was the agent of Penn National, as Plaintiff had argued. (Doc. 78.)

---

[2] Plaintiff has never named the Owners of the Sanford Club as Defendants. (*See* Docs. 1, 39, 80.)

Round this case goes again. Plaintiff filed a third amended complaint including additional agency allegations. (Doc. 80.) Specifically, Plaintiff alleges Penn National has acknowledged Everi is its agent, Penn National controls Everi, and Everi has acted as an agent of Penn National by processing cash action transactions at the Sanford Club. (*Id.* ¶¶ 19–22.) And for the third time, Penn National moves to dismiss for lack of personal jurisdiction and for failure to state a claim. (*See* Doc. 87; *see also* Docs. 15, 41.) With Plaintiff's response (Doc. 92), this matter is ripe for adjudication.

## II. LEGAL STANDARDS

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden to establish jurisdiction over the defendant. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999). To that end, the plaintiff must plead sufficient facts to establish that: (1) a basis for jurisdiction exists under Florida's long-arm statute; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

Unrefuted facts are accepted as true. *Posner*, 178 F.3d at 1215. If, however, "a defendant raises through affidavits, documents or testimony a meritorious challenge to personal jurisdiction, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996) (quoting *Jet Charter Serv., Inc. v. Koeck*, 907 F.2d 1110, 1112 (11th Cir. 1990)); *see also Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (explaining if

the defendant refutes the well-pled jurisdictional facts, the burden "shifts back to the plaintiff to produce evidence supporting jurisdiction") (quoting *Madara*, 916 F.2d at 1514). But in the face of conflicts, the Court construes "all reasonable inferences in favor of the plaintiff." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) (citing *Madara*, 916 F.2d at 1514).

### III.  ANALYSIS

From the starting gun, Penn National has asserted a lack of personal jurisdiction under Rule 12(b)(2). (*See* Doc. 15.) To survive a Rule 12(b)(2) motion to dismiss, Plaintiff must first show that jurisdiction is proper under Florida's long-arm statute, Florida Statute § 48.193. *See Madara*, 916 F.2d at 1514. Plaintiff has twice now argued jurisdiction stems only from an agency relationship between Everi and Penn National. (*See* Doc. 59, pp. 1–3; Doc. 92, p. 3.) And Plaintiff has twice now failed. (*See* Doc. 78.) Finding Plaintiff has failed to establish jurisdiction under Florida's long-arm statute, the Court will not reach the constitutional inquiry nor will it address Penn National's Rule 12(b)(6) arguments. *See Madara*, 916 F.2d at 1514.

### A.  Conducting Business in Florida

The Court begins by independently reviewing Florida's long-arm statute to determine if there is a basis for personal jurisdiction over Penn National. Relevant here, Florida's long-arm statute authorizes the Court to exercise specific jurisdiction over a defendant where the claim arises from the defendant's commission of "a tortious act" or "operating, conducting, engaging in, or carrying on a business" in the state. Fla. Stat.

§ 48.193(1)(a)(1), (2). In its motions to dismiss, Penn National has always undertaken an exhaustive personal jurisdiction analysis, arguing its contacts with Florida are insufficient for it to be "carrying on a business" in Florida. (*See* Docs. 15, 41, 87); *see also* Fla. Stat. § 48.193(1)(a)(1). Plaintiff, insisting on gambling jurisdiction on a single theory (agency), refuses to bite at the business activities argument, calling it a "red herring." (Doc. 92, p. 3.) Very well.

The Court notes, however, the business activities argument is a bit of a dark horse—the question of whether the actions of Penn National itself could have given rise to personal jurisdiction is a far closer call than Plaintiff apparently believed. Penn National admits that "certain officers of Penn National are required to hold operational racing licenses in Florida." (Doc. 87, p. 7; *see also* Doc. 15, p. 10; Doc. 41, p. 12.) Holding a license to do business in Florida is one of four factors courts look to when analyzing jurisdiction under the carrying-on-a-business provision of Florida's long-arm statute, the others being the presence and operation of an office in Florida, the number of clients served, and the percentage of overall revenue gleaned from Florida clients. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005). But Penn National is correct that the other factors weigh against a finding of specific jurisdiction. Penn National argues, and Plaintiff does not dispute, it does not have offices or serve a large number of clients in Florida and receives no revenue from Florida clients. (Doc. 41, p. 12–13; Doc. 87, pp. 11–12.) On balance, on this record, the Court finds there are insufficient factual grounds to establish Penn National was carrying on a business in

Florida and thus subject to personal jurisdiction on this claim. *See Horizon Aggressive Growth, L.P.*, 421 F.3d at 1167 ("In order to establish that a defendant is carrying on business for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit.") (quoting *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000)).

### B.     Agency Relationship

Plaintiff is betting everything on an agency relationship between Penn National and Everi. (Doc. 92, p. 3.) Unfortunately for Plaintiff, this is not a winning hand. General agency principles apply when determining personal jurisdiction. *See Northrup v. Innovative Health Ins. Partners, LLC*, No. 8:17-cv-1890-T-36JSS, 2018 WL 1726436 (M.D. Fla. April 10, 2018);[3] *see also Keim v. ADF Midatlantic, LLC*, 199 F. Supp. 3d 1362, 1368–69 (S.D. Fla. 2016). To establish an agency relationship, Plaintiff must show: (1) acknowledgment by Penn National that Everi was acting as its agent; (2) acceptance of the undertaking by Everi; and (3) control by Penn National over Everi's activities during the agency. *See Goldschmidt v. Holman*, 571 So.2d 422, 424 n.5 (Fla. 1990).

Penn National does not dispute the existence of the first two elements. (*See* Doc. 87.) And Plaintiff explicitly alleges "Penn National has acknowledged Everi's role as its agent by knowingly providing debit and credit card cash-access services to the patrons

---

[3] While unpublished opinions are not binding precedent, they may be considered as persuasive authority. *See* 11th Cir. R. 36-2; *see also United States v. Almedina*, 686 F.3d 1312, 1316 n.1 (11th Cir. 2012).

of [the Sanford Club]. . . that are performed with Everi's technology and Everi's payment terminals . . . ." (Doc. 80, ¶ 21.) Plaintiff's allegations of Everi's acceptance are more dubious, although Plaintiff claims Everi accepts credit and debit cards on Penn National's behalf, an action which could be construed as acceptance of an agency relationship. (*See* Doc. 80, ¶ 22.) What is heavily disputed is the third element, control. *See Goldschmidt*, 571 So.2d at 424 n.5. With everything riding on Penn National's control, the Court finds Plaintiff failed to meet his burden. Third time being the charm, Count I must be dismissed for lack of personal jurisdiction over Defendant Penn National.

"The issue of control is critical to the determination of agency." *Harbaugh v. Greslin*, 436 F. Supp. 2d 1315, 1320 (S.D. Fla. 2006) (quoting *State v. Am. Tobacco Co.*, 707 So.2d 851, 854 (Fla. Dist. Ct. App. 1998)); *see also Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1311 (11th Cir. 2019) ("The key element in establishing actual agency is the control by the principal over the actions of the agent.") (quoting *Hickman v. Barclay's Int'l Realty, Inc.*, 5 So.3d 804, 806 (Fla. Dist. Ct. App. 2009)); *Turi v. Stacey*, No. 5:13-cv-248-Oc-22PRL, 2015 WL 403228, at *9 (M.D. Fla. Jan. 28, 2015). For his claim to survive, Plaintiff is required to establish "operational control." *See Harbaugh*, 436 F. Supp. 2d at 1320 (citing *Am. Tobacco Co.*, 707 So.2d at 854). "Evidence of operational control includes . . . evidence that the principal controlled the internal affairs of an agent or determined how the agent operated on a daily basis." *Id*. (citation omitted)*; see also Turi*, 2015 WL 403228 at *9.

Here, Plaintiff alleges Penn National controls Everi, including an "absolute right to control Everi's ability to continue providing . . . cash-access services to patrons of its

[Sanford Club] establishment." (Doc. 80, ¶ 19; *see also id.* ¶¶ 20, 22, 51.) Under Rule

12(b)(2), unrefuted facts are accepted as true but if a defendant raises evidence refuting

those facts, the burden shifts back to the plaintiff to produce evidence supporting

jurisdiction. *Posner*, 178 F.3d at 1215; *Sculptchair, Inc.*, 94 F.3d at 627; *Louis Vuitton*

*Malletier, S.A.*, 736 F.3d at 1350. Penn National refutes Plaintiff's allegations with a

declaration from Karin Ashford, the Vice President, Legal & Business Affairs of Penn

National (Doc. 88), and the Services Agreement between Penn National and Everi (Doc.

100-1 ("**Services Agreement**")).[4] Ms. Ashford avers that, pursuant to the Services

Agreement, "Penn National does not have a right to manage or control the day-to-day

internal business decisions of Everi . . . . Penn National does not control, oversee, manage

or assist with the use of cash access . . . equipment that Everi [] has provided." (Doc. 88,

¶¶ 26, 27.)

Plaintiff responds by quoting Everi's Security and Exchange Commission's

Quarterly Report ("**Quarterly Report**"): "We [Everi] do not control the cash advance and

ATM services provided to a customer and, therefore, we are acting as an agent whose

performance obligation is to arrange for the provision of these services." (Doc. 92, p. 4;

*see also* Doc. 92-1, p. 10.) But this statement is not the winning hand Plaintiff makes it out

to be. Everi is an agent for its customers in this regard, true—but Everi is not admitting

to being *Penn National's* agent. "Customer" could just as easily refer to the owner of a

---

[4] This document was sealed pursuant to the Court's order. (Docs. 98, 99.) It appears in a Court-only entry. Also, Everi was previously named "Global Cash Access, Inc." (*See* Doc. 88, ¶ 24.) For simplicity, the Court will always refer only to "Everi."

facility such as the Sanford Club. (*See* Doc. 87, p. 18; Doc. 88, ¶¶ 26–29.)  And even if "customer" referred to Penn National, this is hardly a smoking gun or sufficient evidence of control to conflict with Ms. Ashford's declaration. (*See* Doc. 88.) Again, to establish an agency relationship sufficient to impute liability, Plaintiff needs more than conclusory statements that a party is an "agent," and this Quarterly Report's vague claim adds little to the factual landscape. *See Goldschmidt*, 571 So.2d at 424 n.5; *Harbaugh*, 436 F. Supp. 2d at 1320.

To establish personal jurisdiction, Plaintiff was required to plead facts adequate to establish that Penn National had "operational control" over Everi, showing that Penn National controlled the inner workings or daily activities of Everi. *See Harbaugh*, 436 F. Supp. 2d at 1320. Instead, Plaintiff offered conclusory allegations that Everi was acting "under the ultimate oversight and control" of Penn National. (*See, e.g.*, Doc. 80, ¶ 22.) And his most specific allegation, "Penn National has the absolute right to control Everi's ability to continue providing credit and debit card cash-access services . . . by, if it so chooses, terminating Everi as a vendor," falls far short of the level of control needed to establish an agency relationship. (*See id*. ¶ 19.) This allegation is consistent with an independent contractor relationship. *See Dorse v. Armstrong World Indus., Inc.*, 513 So.2d 1265, 1268 n.4 (Fla. 1987) ("The existence of a true agency relationship depends on the degree of control exercised by the principal. Generally, a contractor is not a true agent where the principal controls only the outcome of the relationship, not the means used to achieve that outcome." (citation omitted)). Missing from Plaintiff's allegations are any

facts that would show how or to what extent Penn National controls Everi. Nothing in the Complaint or in the Quarterly Report Plaintiff provided indicates that Penn National controls the internal affairs of Everi, controls how Everi operates on a daily basis, or offers more than vague, conclusory allegations of control and agency. (*See* Docs. 80, 92-1); *see also Harbaugh*, 436 F. Supp. 2d at 1320.

And Penn National has provided evidence it does not exert operational control over Everi. Both Ms. Ashford's declaration and the Services Agreement demonstrate that Penn National has no daily control over Everi. (*See* Docs. 88, 100-1.) With no ace in his hand to refute this evidence, Plaintiff resorts to arguing, "[a]ccepted as true with all inferences drawn in Plaintiff's favor, these allegations [in the Complaint] more than suffice . . . . No more is required here at the pleading stage." (Doc. 92, p. 9.) Not true. Under Rule 12(b)(2), once Defendant has presented evidence that personal jurisdiction does not exist, the burden passes to Plaintiff to refute that evidence. *Posner*, 178 F.3d at 1215; *Sculptchair, Inc.*, 94 F.3d at 627; *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1350. Even construing all reasonable inferences in favor of Plaintiff where there is conflict, as the Court must, Plaintiff has failed to meet his burden. *See Meier ex rel. Meier*, 288 F.3d at 1269.

The Court previously dismissed Plaintiff's claim against Penn National for similar reasons, giving Plaintiff one more opportunity to amend his Complaint to establish jurisdiction. (Doc. 78.) This time, it is clear — Plaintiff simply does not have the cards to establish an agency relationship between Everi and Penn National. Finding no other viable argument for personal jurisdiction, the Court dismisses Defendant Penn National

with prejudice.

### C. Imputation of Tortious Acts

Even if, *arguendo*, Plaintiff had established an agency relationship between Everi and Penn National, Plaintiff still fails to establish personal jurisdiction because he did not adequately allege that Everi committed a tortious act. Florida's long-arm statute extends jurisdiction over nonresident defendants who "through an agent . . . commit[] a tortious act" within the state. Fla. Stat. § 48.193(1)(a)(2). But the agent, Everi, is not plausibly alleged to have committed a tortious act, e.g. violated FACTA. (*See* Doc. 80, ¶¶ 85–92.) "[I]f the agent cannot be held liable, neither can the principal, because there is nothing to impute." *Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995).

Plaintiff argues that Penn National should be liable for Count I (FACTA violations) because of the actions of its alleged agent, Everi. (*See* Doc. 92, p. 3.) In Count I of the Complaint, Plaintiff alleges only Penn National, not Everi, violated FACTA. (Doc. 80, ¶¶ 85–92.) So Plaintiff must, and does, include factual allegations earlier in the complaint attempting to demonstrate Everi's involvement. (*See, e.g., id.* ¶¶ 20–21, 50, 51.) But these additions are implausible, contradictory, and still leave unclear the ultimate fact of who or what provided the services leading to the FACTA violation. (*See id.* ¶ 20 ("Everi, under the control of Penn National, provides cash-access services to patrons . . . as Penn National's agent."); *see also id.* ¶ 21 ("Penn National . . . knowingly provide[s] . . . cash-access services to the patrons . . . with . . . Everi's payment terminals and other equipment . . . .")).

And who "provided" the receipt, as required for FACTA liability? *See* 15 U.S.C. § 1681c(g) (2018). "Upon completion of the [credit card] transaction [at the Sanford Club], Plaintiff was presented by Defendants with an electronically printed [FACTA-violative] receipt." (Doc. 80, ¶ 60.) "[T]he machine and system that printed the receipt was designed, programmed, maintained and operated by Everi." (*Id.* ¶ 63.) "Everi prints and provides receipts to customers, with the employees of the [Sanford Club] acting in turn as Everi's agents, with the entire operation overseen and controlled by Penn National." (*Id.* ¶ 22.)

Depending on the paragraph, Plaintiff alleges the services are provided by: (1) Penn National (*id.* ¶ 21); (2) Everi (*id.* ¶ 20); or (3) the Sanford Club employees, acting as Everi's agents (*id.* ¶¶ 22, 23). And the receipt was "presented by Defendants." (*Id.* ¶ 60.) By Everi? By Penn National? By employees of the Sanford Club acting as the agent of Everi acting as the agent of Penn National? Plaintiff's insistence on an agency relationship means logically Penn National did not directly present Plaintiff with the receipt, but while Plaintiff alleges Everi "designed, programmed, maintained and operated" the machine that "printed" the receipt, there are no allegations Everi owned the machine. (Doc. 80, ¶ 63.) Only once does Plaintiff allege Everi *provided* the receipt, as required by FACTA, and there Plaintiff again insists on an agency relationship, not direct action, to establish liability: "Everi prints and provides receipts to customers . . . with the employees of the [Sanford Club] facility acting . . . as Everi's agents." (Doc. 80, ¶ 22; *see also id.* ¶ 23 ("[T]he employees of the [Sanford Club] have in turn acted as Everi's agent in completing such transactions, including in printing and providing receipts . . . .")); 15 U.S.C.

§ 1681c(g) (2018).

Taken as a whole, there is only one possible reading of these paragraphs that doesn't require doublethink: the Sanford Club employees violated FACTA by providing the receipt to Plaintiff, their violation is imputed to their principal, Everi, and Everi's liability is in turn imputed to its principal, Penn National. (*See* Doc. 80.) So liability now turns on two agency relationships: the first between Penn National and Everi, and the second between Everi and employees of the Sanford Club. But Plaintiff has failed to allege *any* facts establishing an agency relationship between Everi and the Sanford Club employees. (*See* Doc. 80.) And now we have truly come full circle. (*See* Doc. 78.) Again, to plead an agency relationship, Plaintiff must allege an acknowledgement by Everi that the employees were acting as its agent, acceptance of the undertaking by the employees, and control by Everi over the employees. (*See id.* at 9); *see also Goldschmidt*, 571 So.2d at 424 n.5. To quote this Court's previous order dismissing Count I: "Plaintiff doesn't plead those facts." (Doc. 78, p. 9.)

Plaintiff, having failed to plausibly allege the Sanford Club employees are the agents of Everi, cannot impute the employees' violation to Everi, and if Everi is not alleged to have committed a FACTA violation, Plaintiff cannot use the alleged agency relationship with Everi to impute liability to Penn National. *See Mobil Oil Corp.*, 648 So.2d at 121. Finding no plausible allegations that a tortious act was committed by an agent of Penn National, the Court finds there is no personal jurisdiction over Penn National.

Round and round the track this case has gone, in a cycle of dismissals,

amendments to the complaint, and dismissals again. (*See* Docs. 1, 33, 34, 38, 39, 78, 80.) But the finish line, for Penn National at least, is here. The Court, finding that no personal jurisdiction exists over Penn National, dismisses with prejudice Count I of the Complaint and terminates Penn National as a party to this case.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.    Defendant Penn National Gaming, Inc.'s Motion to Dismiss Third Amended Complaint With Incorporated Memorandum of Law (Doc. 87) is **GRANTED.**

2.    Count I of Plaintiff Mat Jessop's Third Amended Complaint (Doc. 80) is **DISMISSED WITH PREJUDICE.**

3.    The Clerk is **DIRECTED** to terminate Defendant Penn National Gaming, Inc. as a party to this action.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on October 25, 2019.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record